IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

RICARDO ANTONIO CREWS,

      Petitioner,

v.                           Civil Action No.: 7:09-cv-00115

GENE JOHNSON, DIRECTOR,
VIRGINIA DEPARTMENT OF CORRECTIONS,

      Respondent.

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## AND RULE 5 ANSWER

The Respondent, by counsel, submits the following brief in support of his Motion to Dismiss and Rule 5 Answer:

## PROCEDURAL HISTORY

1. On June 1, 2005, the petitioner was convicted by a jury in the Lynchburg Circuit Court of three counts of use of a firearm during the commission of a felony; abduction with the intent to defile; statutory burglary with intent to commit murder, rape or robbery while armed with a deadly weapon; attempted robbery; and rape. (See Exhibit 1, copy of order, attached to Exhibit A).

2. By final order dated August 12, 2005, the circuit court sentenced petitioner to fifty years' and one month incarceration, with no time suspended. (See Exhibit 2, copy of final order, attached to Exhibit A).

3. The petitioner subsequently appealed his convictions to the Virginia Court of Appeals. (See Exhibits B & C, copy of petition for appeal and brief in opposition). By *per curiam* order dated April 26, 2006, the Court of Appeals denied the petition for appeal. (See Exhibit 3, copy of order, attached to Exhibit A).

4. The petitioner then sought review by a three-judge panel of the Court of Appeals. (See Exhibit D, copy of three-judge demand). On December 28, 2006, the Court of Appeals denied the petition for appeal. (See Exhibit 4, copy of order, attached to Exhibit A).

5. The petitioner subsequently appealed his convictions to the Virginia Supreme Court. (See Exhibits E & F, copy of petition for appeal and brief in opposition). By order dated May 17, 2007, the Virginia Supreme Court refused the petition for appeal. (See Exhibit 5, copy of order, attached to Exhibit A).

6. On April 17, 2008, the petitioner timely filed a petition for a writ of habeas corpus in the Lynchburg Circuit Court in which he alleged the following:

    A. The petitioner was denied his right to due process under the 5th, 6th, and 14th Amendments of the U.S. Constitution when the trial court allowed evidence that petitioner was not entitled to test to be presented by the Commonwealth.

    B. The petitioner was denied his right to due process under the 5th, 6th, and 14th Amendments of the U.S. Constitution when the prosecution did not prove his guilt beyond a reasonable doubt.

    C. The petitioner was denied his rights under the 5th, 6th, and 14th Amendments of the U.S. Constitution when counsel failed to challenge the sufficiency of the evidence on appeal.

    D. The petitioner was denied his rights under the 5th, 6th, and 14th Amendments of the U.S. Constitution when counsel failed to appeal the Court of Appeals use of evidence that was not before the trial court to uphold the trial court's decision.

7. By final order dated June 13, 2008, the Lynchburg Circuit Court dismissed the petition. (See Exhibit G, copy of final order).

8. Petitioner subsequently appealed the denial of his petition for a writ of habeas corpus to the Virginia Supreme Court. (See Exhibit H, copy of petition for appeal). By final order dated April 1, 2009, the

Virginia Supreme Court refused the petition for appeal. (See Exhibit I, copy of order).

## PRESENT PETITION

9. On April 5, 2009, petitioner timely filed a petition for a writ of habeas corpus in this Court in which he alleges the following:

A. In violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution, Petitioner was denied his right to due process when the trial court allowed DNA evidence, that Petitioner was not allowed to test, to be presented by the Commonwealth, thus undermining the fundamental fairness of Petitioner's trial.

B. In violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution, Petitioner was denied his due process rights when the prosecution failed to prove his guilt beyond a reasonable doubt.

C. In violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution, Petitioner was denied his right to effective assistance of counsel when counsel failed to challenge the [sufficiency] of [the] evidence on appeal.

D. In violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution Petitioner's right to effective assistance of counsel was denied [when] counsel failed to appeal the Court of Appeal's use of evidence that was not before the trial court to uphold the trial court's decision.

## ARGUMENT

### Exhaustion of State Remedies

10. The petitioner has exhausted his state remedies.

## Petitioner's Claims Are Without Merit Under the AEDPA.

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim – (1) resulted in a
> decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

11.  A state court decision is "contrary to . . . clearly established

Federal law" "only if 'the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the

state court decides a case differently than [the Supreme] Court has

on a set of materially indistinguishable facts.'" Carter v. Lee, 283 F.3d

240, 248 (4th Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362,

413 (2000)).

12.  "The 'unreasonable application' clause of § 2254(d)(1)

applies when the 'state court identifies the correct governing legal

principle from th[e] [United States Supreme Court's] decisions but

unreasonably applies that principle to the facts of the prisoner's

case.'" Holland v. Jackson, 542 U.S. 649, 652 (2004) (per curiam)

(quoting Taylor, 529 U.S. at 413). See also Rompilla v. Beard, 545 U.S. 374, 380 (2005) (same). "That is, 'the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable.'" Beard, 545 U.S. at 380 (quoting Wiggins v. Smith, 539 U.S. 510, 520-521 (2003)). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Jackson, 542 U.S. at 652.

13. However, it is presumed "that state courts know and follow the law." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam). Furthermore, § 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings[,]" Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997), "which demands that state court decisions be given the benefit of the doubt." Visciotti, 537 U.S. at 24.

> [H]abeas corpus is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals. On the contrary, [the United States Supreme Court] ha[s] long insisted that federal habeas courts attend closely to those considered decisions, and give them full effect when their findings a judgments are consistent with federal law.

Taylor, 529 U.S. at 383.

14. Consequently, "federal habeas courts must make as the starting point of their analysis the state court's determinations of fact, including that aspect of a 'mixed question' that rests on a finding of fact." Taylor, 529 U.S. at 386.

## Claim (A)

15. In claim (A) petitioner alleges that he "was denied his right to due process when the trial court allowed DNA evidence, that [he] was not allowed to test, to be presented by the Commonwealth, thus undermining the fundamental fairness of [his] trial."

16. This claim is without merit and must be dismissed. The Virginia Court of Appeals specifically addressed this claim and held petitioner was not entitled to relief because he had not met his burden to show "bad faith." (See Exhibit 3, copy of order, attached to Exhibit A).

17. Addressing petitioner's claim, the Court of Appeals found:

> On October 5, 1999, Melissa Lipscomb opened the door of her apartment to see two men standing in front of her. They barged in the door, held up a gun, and demanded that Lipscomb and her two friends give them money. One individual took Lipscomb into a back room and forced her to have sex against her will while holding a firearm to her head. The two men then fled. The police were called, and Lipscomb was taken to a hospital. At the hospital, swabs were taken from Lipscomb's vaginal area. DNA material that was not Lipscomb's was found on

these swabs and entered into a database. At that time, DNA analysis involved examination of eight areas of the DNA molecule, so that an eight-point test was conducted on the samples.

On March 15, 2001, the kit containing the swabs was thrown away. Subsequently, [petitioner] was convicted of a felony and was required to submit DNA. [Petitioner's] DNA matched the DNA profile from the swabs taken from Lipscomb, such that another match would have the odds of one in ninety million in the black population. The Commonwealth's Attorney's Office contacted the lab and requested that a sixteen-point comparison be completed. However, such analysis could not be performed because the kit containing the original swabs had been discarded.

Based on the fact that a sixteen-point analysis could not be performed, [petitioner] moved to suppress the original DNA tests comparing [petitioner's] DNA to the perpetrator's DNA. The trial court denied the motion.

[Petitioner] argues that because the swabs were discarded before a sixteen-point test could be performed, that the original test, matching [petitioner's] DNA to the DNA removed from Lipscomb, should have been suppressed because it violated his due process rights. We disagree. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Whether the police discarded evidence in bad faith "depends on whether agents of the state had knowledge of the exculpatory value of the evidence when it was lost or destroyed. Thus, the possibility that evidence could have exculpated a defendant depending on future testing results is not enough to satisfy the constitutional standard of materiality." Lovitt v. Warden, 266 Va. 216, 241, 585 S.E.2d 801, 815 (2003) (citations omitted); see Tickel v. Commonwealth, 11 Va. App. 558,

8

562, 400 S.E.2d 534, 537 (1991) ("Determining the intentions of the police in failing to preserve evidence requires consideration of the nature of the evidence.").

> At the time the kit was thrown away, investigators believed that "all of the testing that could be done at that time had been completed. And there wasn't any value of keeping the evidence." The laboratory did not start testing for sixteen points until 2002, a year after the kit was discarded. The police did not act in bad faith, and thus the trial court did not err in denying the motion to suppress.

(See Exhibit 3, copy of order, attached to Exhibit A).

18. This decision was neither "contrary to," nor "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Indeed, the state court correctly identified and expressly relied on Youngblood when addressing petitioner's claim. Likewise, the state court's judgment did not result from "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Consequently, the holding of the Virginia Court of Appeals was not "objectively unreasonable," and this Court must dismiss claim (A). See Beard, 545 U.S. at 380.

19. Moreover, the claim is without merit. Petitioner raped Lipscomb on October 5, 1999. (05/21/04 Tr. at 29-30, 46; 06/01/05 Tr. at 56-57, 64-66). A rape PERK kit was used on Lipscomb to

collect a DNA sample from the semen her attacker left behind. (05/21/04 Tr. at 29-30; 06/01/05 Tr. at 77-82, 127). On February 10, 2000, a certificate of analysis was prepared from evidence collected in the PERK kit. (05/21/04 Tr. at 31-32; 06/01/05 Tr. at 126-127, 130-133, 177). Petitioner had not yet been identified as a suspect. (05/21/04 Tr. at 32). The PERK kit was destroyed on March 15, 2001. (05/21/04 Tr. at 32, 40, 53, 60). Petitioner's DNA was matched to the PERK kit sample taken from Lipscomb on February 20, 2002 – nearly one year after the PERK kit had been destroyed. (05/21/04 Tr. at 32-33; 06/01/05 Tr. at 131-138, 153, 179).

20. When asked why he authorized the disposal of the PERK kit, Investigator Hise of the Lynchburg Police Department testified:

> At the time the case had been inactivated [sic] for a fairly lengthy period of time. The evidence had been forwarded to the lab. All of the testing that could be done at that time had been completed. And there wasn't no [sic] value of keeping the evidence.

(06/01/05 Tr. at 178).

21. Investigator Hise authorized the destruction of the PERK kit when the eight-point DNA test was still the *only* test the forensic lab used to test DNA. (06/01/05 Tr. at 118-119, 132-133, 177-178). The sixteen-point DNA test was not used until early 2002 – more than two

years *after* petitioner raped Lipscomb, nearly two years *after* the original eight-point DNA test was performed, and almost one year *after* the PERK kit was destroyed. (06/01/05 Tr. at 132-133, 193).

22. Petitioner does not allege that he is innocent of rape; he does not allege that a sixteen-point DNA test would have exonerated him; and he does not allege the police destroyed the rape kit in "bad faith." Petitioner merely argues that his inability to re-test the DNA sample violated his Due Process rights. This claim has been squarely rejected by the United States Supreme Court.

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, *the results of which might have exonerated the defendant*.

*Youngblood*, 488 U.S. at 57 (emphasis added). Accordingly, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially useful* evidence does not constitute a denial of due process of law." Id. at 58 (emphasis added). See also *Illinois v. Fisher*, 540 U.S. 544, 549 (2004) (per curiam) ("[T]he applicability of the bad faith requirement in *Youngblood* depend[s] not

on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence.").

23. On this record, petitioner cannot show, nor has he alleged, that the police acted in bad faith when they destroyed the "potentially useful" evidence in the PERK kit.[1] Because petitioner's claim is without merit, this Court must dismiss claim (A).

## Claim (B)

24. In claim (B) petitioner alleges he was "denied his due process rights when the prosecution failed to prove his guilt beyond a reasonable doubt."

---

[1] Petitioner argues in his "Motion to Amend" that he had a statutory right to have the PERK kit preserved. He cites Va. Code §§ 19.2-270.4:1 and 19.2-327.1 to support his position. At the outset, it must be noted that petitioner's "rights" pursuant to the Virginia statutes are not cognizable in federal habeas corpus. See § 2254(a). Moreover, these statutory provisions are inapplicable to petitioner's case. Virginia Code § 19.2-270.4:1 gives a criminal defendant the right to have "human biological evidence" preserved for up to 15 years after he is convicted of a felony. Here, the PERK kit had been destroyed before petitioner was convicted of rape. So there was no "human biological evidence" to preserve after petitioner was convicted. Virginia Code § 19.2-327.1 is also inapplicable because it presumes the existence of "human biological evidence" that can be re-tested post-trial. Again, the PERK kit was destroyed before trial. There is no "human biological evidence" that petitioner can have re-tested.

25. This claim must be dismissed because the Lynchburg Circuit Court found this claim was procedurally barred by <u>Slayton v. Parrigan</u>, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974). (<u>See</u> Exhibit G). Because petitioner did not raise this claim on direct appeal, and <u>Slayton</u> is an adequate and independent state ground for dismissal, claim (B) is precluded from federal review. <u>See</u> <u>Wright v. Angelone</u>, 151 F.3d 151, 159 (4th Cir. 1998) ("We have recognized that 'the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision.'") (citation omitted). Accordingly, claim (B) must be dismissed.

**Claim (C)**

26. In claim (C) petitioner alleges he was "denied his right to effective assistance of counsel when counsel failed to challenge the [sufficiency] of [the] evidence on appeal."

27. This claim does not entitle petitioner to relief. The Lynchburg Circuit Court considered this claim on the merits and specifically held:

> Concerning claim (C), counsel chose not to challenge the sufficiency of the evidence on appeal because the petitioner's DNA "excluded the possibility that someone other than the petitioner committed the rape." As a result, counsel "chose to challenge the admissibility of the DNA evidence." If this argument had

been successful on appeal, "[a] subsequent prosecution of the petitioner . . . would have then been virtually – if not entirely – impossible because [the DNA] was the 'lynchpin' of the Commonwealth's case." Accordingly, counsel "made the tactical decision to challenge the admissibility of the DNA . . . because that issue was dispositive," and a sufficiency argument "had no merit whatsoever."

Since counsel's decision to challenge the admissibility of the DNA evidence instead of the sufficiency of the evidence was a reasonable appellate strategy, this Court finds that claim (C) is without merit and dismisses the claim. See Jones v. Barnes, 463 U.S. 745, 751-752 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

(See Exhibit G).

28.   This decision was neither "contrary to," nor "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Likewise, the state court's judgment did not result from "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Consequently, the holding of the Lynchburg Circuit Court was not "objectively unreasonable," and this Court must dismiss claim (C). See Beard, 545 U.S. at 380.

29. Moreover, the claim is without merit. Petitioner's guilt or innocence hinged on one critical piece of evidence: his DNA. So counsel's decision to attack the admissibility of the DNA evidence on appeal was petitioner's strongest defense. Counsel clearly knew that if his argument on appeal was successful, it would have been impossible for the Commonwealth to have retried petitioner for *any* crime because no other evidence connected petitioner to Lipscomb. (06/01/05 Tr. at 73).

30. Without the DNA, the Commonwealth had no case against petitioner; with it, the Commonwealth could prove every crime. It was, therefore, perfectly reasonable for counsel to strategically choose to attack the admissibility of the DNA evidence on appeal instead of wasting his time attacking the sufficiency of the evidence. Because petitioner's claim is without merit, this Court must dismiss claim (C).

**Claim (D)**

31. In claim (D) petitioner alleges his "right to effective assistance of counsel was denied [when] counsel failed to appeal the Court of Appeal's use of evidence that was not before the trial court to uphold the trial court's decision."

32. To fully understand petitioner's claim, a brief history of the record is necessary. During the motion to suppress, Investigator Hise was asked if he ordered the forensic lab to destroy the PERK kit. (05/21/04 Tr. at 32-38). Hise testified that he did not, and that he also did not know why the kit was destroyed. (05/21/04 Tr. at 32-38). During trial, Hise was shown a copy of the form he signed authorizing the destruction of the PERK kit. (06/01/05 Tr. at 177-178). Hise confirmed that he signed the order, and explained why he ordered the PERK kit to be destroyed. (06/01/05 Tr. at 177-178).

33. In the Court of Appeals' *per curiam* opinion, the Court quoted Hise's <u>trial statement</u> – and not his earlier statements – to support its conclusion that Hise did not act in bad faith when he ordered the PERK kit to be destroyed. (<u>See</u> Exhibit 3, copy of order, attached to Exhibit A). Petitioner contends this was error. According to petitioner, the Court of Appeals should have considered <u>only</u> Hise's pre-trial statements to decide the suppression issue. By considering Hise's testimony during trial, petitioner argues the Court of Appeals used evidence that was not properly before it to decide the suppression issue.

34. To petitioner, the Court of Appeals "error" was so plain that counsel had a duty to appeal it to the Virginia Supreme Court. And counsel's failure to do so rendered him ineffective.

35. This claim does not entitle petitioner to relief. The Lynchburg Circuit Court considered this claim on the merits and specifically held:

> Concerning claim (D), counsel did not argue that the Court of Appeals erred when it relied on evidence adduced at both the suppression hearing *and* the trial to affirm the petitioner's convictions because "such an argument would have been entirely frivolous." As counsel aptly notes, and this Court finds, the Court of Appeals explicitly permits reliance on such evidence. See Kidd v. Commonwealth, 38 Va. App. 433, 439, 565 S.E.2d 337, 340 (2002). For counsel to have made any argument to the contrary "would have been futile, and a complete waste of time."
>
> This Court finds that counsel's decision not to make a frivolous argument on appeal is the hallmark of effective advocacy. Accordingly, this Court finds that claim (D) is without merit and dismisses the claim. See Jones v. Barnes, 463 U.S. 745, 751-752 (1983).

(See Exhibit G).

36. This decision was neither "contrary to," nor "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Likewise, the state court's judgment did not result from "an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Consequently, the holding of the Lynchburg Circuit Court was not "objectively unreasonable," and this Court must dismiss claim (D). See Beard, 545 U.S. at 380.

37. Moreover, the claim is without merit. The law in Virginia is clear that when "determining whether there is evidence to sustain a conviction, an appellate court must consider *all the evidence* admitted at trial that is *contained in the record*." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008) (emphasis added). Furthermore, Court of Appeals precedent makes it abundantly clear that "when [it] review[s] the trial judge's refusal to suppress evidence, [it] consider[s] the 'evidence adduced at both the trial *and* the suppression hearing.'" Kidd, 38 Va. App. at 439, 565 S.E.2d at 340 (citation omitted) (emphasis added).

38. The Circuit Court properly held that it would have been "frivolous" for counsel to argue that the Court of Appeals erred when it considered evidence from both the suppression hearing *and* the trial because such a claim would have been meritless under Virginia law. And counsel has no duty to raise a meritless claim on appeal.

Because petitioner's claim is without merit, this Court must dismiss claim (D).

39. Respondent denies each and every allegation of the petition not specifically admitted herein.

40. The claims in the petition can be resolved on the basis of the present record and, therefore, no evidentiary hearing is necessary.

**WHEREFORE**, the Respondent moves this Court to dismiss the petition for a writ of habeas corpus.

Respectfully submitted,

**GENE JOHNSON, DIRECTOR,
VIRGINIA DEPARTMENT OF CORRECTIONS**

By_____/s/_____
       Joshua M. Didlake, AAG
       VSB #70061
       Attorney for Respondent
       Office of the Attorney General
       900 East Main Street
       Richmond, Virginia 23219
       Phone: 804-786-2071
       Fax: 804-371-0151
       jdidlake@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of May, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

By_____/s/_____
Joshua M. Didlake, AAG
VSB #70061
Attorney for Respondent
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: 804-786-2071
Fax: 804-371-0151
jdidlake@oag.state.va.us

I also certify that on the 21st day of May, 2009, a copy of this of Motion to Dismiss and Rule 5 Answer was mailed to: Ricardo Antonio Crews, No. 349962, Wallens Ridge State Prison, 272 Dogwood Drive, P.O. Box 759, Big Stone Gap, Virginia 24219.

By_____/s/_____
Joshua M. Didlake, AAG
VSB #70061
Attorney for Respondent
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: 804-786-2071
Fax: 804-371-0151
jdidlake@oag.state.va.us